## Patterson *against* Stewart.

The acknowledgment, made by a sheriff in open court, of the execution of his deed conveying real estate sold by him under execution, is considered a judicial act, of which a registry or entry ought to be made by the prothonotary or clerk of the court on the records thereof. If this be omitted, no other evidence can be received to show that such acknowledgment was made, so as to entitle the deed to be read in evidence—not even a certificate thereof written upon it and given by the clerk under his proper signature and the seal of the court.

This being the rule on the subject, the judgment of the court below was reversed, for admitting parol evidence, where the deed was proved to have existed and to have been lost, or mislaid so that it could not be found, to show that such certificate of the acknowledgment was written and made on the deed; and, thereupon for permitting the deed to be read in evidence to the jury; when it appeared that no entry thereof had been made on the records of the court.

ERROR to the district court of *Allegheny* county.

Action of covenant, brought by William Stewart, the defendant in error, against James Patterson, the plaintiff in error, for a breach of covenant of warranty of title and a breach of covenant of seisin freed from all incumbrances done or suffered from the grantor, contained in a deed of conveyance in fee simple, made by the latter to the former on the 6th of September 1817, for two lots of ground, situate in the town of Sidneyville, and numbered 51 and 52 according to a plan of lots laid out in said town by said Patterson.

The plaintiff upon the trial of the cause, in order to sustain his claim, gave in evidence, first, the deed of conveyance, showing the covenants entered into, to be kept and performed on the part of the defendant. And next, for the purpose of showing that they had not been kept and performed, but broken by the defendants, the plaintiff gave in evidence the exemplification of a record from the

[Patterson v. Stewart.]

court of common pleas of Allegheny county, showing a judgment obtained by a Samuel Jones against the defendant, Patterson, on the seventh day of September 1816, for 2969 dollars 62 cents damages, besides costs of suit, which bound the lots and remained in full force and unsatisfied at the time of making the deed; and upon which, afterwards, as it appeared by the exemplification to August term 1821 of the same court, a writ of *fieri facias* was sued out, directed and delivered to the then sheriff of the said Allegheny county, by virtue whereof the lots conveyed by the deed were seized and taken in execution, condemned to sale, and by virtue of an *alias* writ of *venditioni exponas* issued to November term 1822, of the same court, sold to John M'Donald, Esq.   The plaintiff then, by his counsel, to show that this sale of the lots by the sheriff had been perfected, offered to prove by parol evidence that a deed executed by Morgan Neville, the sheriff who made the sale, to John M'Donald for the lots, was in the possession of M'Donald in his lifetime, and upon his death came into the hands of his executors, with an endorsement thereon in the handwriting of the clerk of the prothonotary, stating that the deed was acknowledged on the 14th of November 1822.   That the printed form of acknowledgment was subjoined to the deed and signed by James R. Buttler, the prothonotary of that date, but not filled up; that subsequently Charles A. Bradford, an attorney of the court, on behalf of the executors or of a purchaser from them, moved the court to have the acknowledgment entered *nunc pro tunc,* which was granted by the court; and the blanks accordingly, in the printed acknowledgment on the deed, were then filled up by the clerk and the seal of the court affixed thereto: that the said deed is lost and can not be found, although frequent searches have been made for it: that the records of the court show no entries either of the original acknowledgment or of the order of the court subsequently made, directing it to be perfected: nor is any record of the deed to be found in the prothonotary's office.   And having made proof to this effect to show further that soon after the sale of the lots Mr M'Donald took possession of them; and that he and his alienees have held, improved and occupied them ever since.   To this evidence the defendant's counsel objected, because the sheriff's deed was of no validity without being acknowledged in open court, and the only evidence of this having been done was a record thereof made by the court, which could not be supplied by parol evidence.

The learned judge of the district court, before whom the cause was tried, overruled the objection; stating that "if a purchaser at sheriff's sale in this county, who has been so unfortunate as to lose his deed can not supply its want by such proof, many titles will fail.   The records of this county were formerly kept in the most careless manner, as the court has often had occasion to observe when deeds were acknowledged by the sheriff.   The clerk contented himself with making a memorandum on the back of the

deed, without making other record of the fact. And even when this defective act was remedied by the order of the court, the clerks were too careless to record the order, and contented themselves with executing it by amending what was irregular on the face of the deed: so that the only record was on the deed: and if that is lost, it must necessarily be proved as any other lost paper, whether it be deed or record." To this opinion the defendant's counsel excepted; which forms the ground of the first error assigned.

The plaintiff then under his offer and the allowance of the court produced Charles A. Bradford, Esq., who testified as follows:— "Shortly before the case of Mulgrew against M'Kee was tried in this court, on examining the title-papers of John M'Donald, I being agent of his executors, had his title-papers in my hands; and among them found a deed, from Morgan Neville, sheriff, for two acre lots in Sidneyville, described in the *venditioni exponas* given in evidence above, as lots numbered 12 and 13. The deed may have contained other property, but my attention was only called to the acre lots 12 and 13. I had frequently seen Mr Neville write and know it was his handwriting in the signature to the sheriff's deed. The name of James R. Buttler, the then prothonotary, was subscribed to the printed duplicate of acknowledgment, but the blanks in the duplicate were not filled up. I had frequently seen James R. Buttler write, and knew the signature to be his handwriting, which was set to the printed form of the acknowledgment subjoined to the deed. The memorandum of the acknowledgment made on the deed was thus: 'Acknowledged (stating a certain) day of November 1822:' I think it was the 14th, but can not say that with confidence, but know it was some day in November 1822. I was told that the endorsement thus made was in the handwriting of James B. Oliver, who was a clerk in the office at that time. All I can say is, that it was very much like the handwriting in which the dockets of that date were kept.

"Some short time previous to the trial of the cause of Mulgrew against M'Kee, I think a few weeks before, but not certain, but certainly within a year before that time, I took the deed into the court of common pleas, and moved the court, Mr Shaler being then president, to direct the acknowledgment to be filled up as of the date endorsed on the deed. The court, upon inspection and examination of the deed, the signature of the prothonotary and the endorsement on the deed, being satisfied that the deed had been acknowledged in open court, granted my motion. I immediately took into the prothonotary's office the motion in writing on a slip of paper marked by the prothonotary in court as granted. The clerk in the office filled up the acknowledgment, and affixed the seal of the court thereto in my presence. The writing from the prothonotary, containing the motion and the order of the court thereon, I left with the clerk—his name was George R. Riddle. I recollect well of comparing the sheriff's deed with the writs of *fieri facias*

[Patterson v. Stewart.]

and *venditioni exponas* read in evidence above, and of observing that it was based on and recited the same writs.

"The deed was afterwards given in evidence on the trial of the cause of Mulgrew against M'Kee, and from that time I have never seen it. I have frequently since searched for it at the request of John M'Kee, and of Thomas S. Clarke, who bought of M'Kee; and at the request of Mr Shaler, for this suit, but without success. I searched in all places where it was likely to be. M'Kee denied that it had got among his papers; appeared anxious to find it, and requested me to search for it. He now lives in Missouri. I have searched the records to find the entries of the acknowledgment of the deed, but could find nothing of the kind, not even a trace of it. I made a plan of some of Mr Patterson's out lots from his deed: these two lots in question, 51 and 52, are included in the acre lots 12 and 13 of Sidney's plan. Mr M'Donald died in 1831. In June 1831 all his property in Birmingham and Sidneyville was sold by his executors to Frederick Bausman and John M'Kee. They made separate deeds between themselves. John M'Kee and Bausman spoke of being in the possession of the lots, but I never saw them in possession. Tobin brought ejectments against the tenants of M'Kee. He claimed under a commissioner's title. M'Kee bought him out.."

Samuel Hare, Esq., a witness produced also by the plaintiff, testified that Mr M'Kee purchased the two lots in question, 51 and 52, of the executors of Mr M'Donald in the autumn after M'Donald's death, and erected brick houses on them in the spring following. The deed of conveyance for these lots, from the executors of Mr M'Donald to Mr M'Kee, was also given in evidence by the plaintiff, and appeared to have been executed on the 5th day of April A. D. 1832.

After the plaintiff below closed his evidence the defendant by his counsel offered to show that the lots in question were assessed with taxes as unseated land for the years 1819, 1820, 1821 and 1822, in the name of Stewart, the plaintiff; and that on account of the non-payment thereof the lots were sold to Michael Mulgrew, who by virtue thereof recovered them from Mr M'Kee. To this evidence the plaintiff by his counsel objected. The court overruled the evidence, and the counsel for the defendant thereupon excepted to the opinion of the court. This exception forms the ground of the second and last error assigned.

*Mr Biddle* and *Mr M'Candless*, for plaintiff in error, cited in support of the first error 6 *Esp.* 80; 1 *Ibid.* 44; 2 *Wash. C. C. R.* 1; 1 *Ibid.* 330; 7 *Serg. & Rawle* 273; 4 *Watts* 396.

*Mr Shaler*, for defendant in error.

PER CURIAM.—The first error, according to the decision of a

majority of this court in the case of Bellas *v.* M'Carty, *ante* 13, is sustained, and therefore, on account of it, alone, the judgment of the district court must be reversed.   This may render a decision of the question embraced in the second.error unnecessary for ever in this case.   But should the sheriff's sale of the lots to Mr M'Donald be established on another trial of this cause, when it may become necessary to pass on the second point, it may be observed that there does not seem to be much difficulty attending it.   For it is clear, that if Stewart, the plaintiff, had paid the taxes, for the non-payment whereof the lots were sold to Mulgrew, that would not have secured and protected him in the enjoyment of them against Mr M'Donald or M'Kee, the assignee of M'Donald's executors, who became the purchaser of them at sheriff's sale under the judgment in favor of Jones against Patterson, the defendant here.   It is not easy to perceive how the omission of Stewart to pay the taxes injured or affected the rights of Patterson, seeing the latter, by his own default to pay the judgment of Jones, upon which the lots were sold and for the payment of which they were bound, suffered them to be taken in execution and sold from Stewart.   To have required Stewart under such circumstances to have paid the taxes, would have been no better than compelling him to throw so much money away, beside losing the lots themselves, without the most distant prospect of being reimbursed.   Besides it is impossible not to see that Patterson has been the gainer and Stewart the loser by reason of the default of Patterson in all that has been done.   Patterson has in effect received pay twice for the lots; first, upon his sale of them to Stewart; and secondly, by the appropriation of the money arising from the sheriff's sale of them, afterwards, towards payment of the debt owing by him to Jones: whereas Stewart, on the other hand, after having paid Patterson for the lots, has lost them through the neglect of Patterson to pay the debt owing by him to Jones, and not by reason of the non-payment of the taxes, as has been alleged, because they were taken from Stewart by the sheriff's sale something like two years before the sale was made of them for non-payment of the taxes.   Had this latter sale been made first, there might have been some color for the argument of the defendant's eounsel, but it could have availed Stewart nothing to have paid the taxes after the lots had been taken and sold from him by the sheriff; by paying them either then or at any time before, he would have been a loser without any prospect of redress whatever: in short, it would have been the extreme of folly in him to have done so.

Judgment reversed and a *venire de novo* awarded.